MICHAEL J. McCUE (Nevada Bar #6055)
mmccue@LRLAW.com
JONATHAN W. FOUNTAIN (Nevada Bar #10351)
jfountain@LRLAW.com
LEWIS AND ROCA LLP
Suite 600
3993 Howard Hughes Parkway
Las Vegas, Nevada 89169
(702) 949-8200 (tele)
(702) 949-8398 (fax)

Attorneys for Plaintiff
Lifetime Products, Inc.

## UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| LIFETIME PRODUCTS, INC., a Utah corporation,<br><br>Plaintiff,<br><br>vs.<br><br>NINGBO WANXIANG PLASTICS PRODUCTS CO., LTD., a Chinese corporation, HANGZHOU DALI TOOLS PACKING CO., LTD., a Chinese corporation, ZHEJIANG BESTEM FURNITURE, CO., LTD., a Chinese corporation, NINGBO STEP-FORWARD INDUSTRY CORP., a Chinese corporation, and NINGBO STEP-FORWARD IMP. & EXP. CO., LTD.,<br><br>Defendants. | Case No.  2:09-CV-802-JCM-(PAL)<br><br>**PRELIMINARY INJUNCTION** |

Having duly considered Plaintiff's <u>Emergency</u> *Ex Parte* Motion For A Temporary Restraining Order With Seizure And Preliminary Injunction ("Plaintiff's Motion"), the supporting declaration of Brent Allen and the exhibits attached thereto, Plaintiff's Reply in Support of Plaintiff's Motion, and the supporting Declaration of Jonathan W. Fountain; having received no opposition from any of the Defendants; and having been informed that Defendants Ningbo Step-Forward Industry Corporation and Ningbo Step-Forward Import & Export Company, Limited (collectively the "Step-Forward Defendants") have been dismissed from this

action by Plaintiff without prejudice, the Court hereby makes the following findings of fact and conclusions of law, and hereby grants Plaintiff's motion for a preliminary injunction.

**Findings of Fact**

1. Lifetime is the world's leading manufacturer of folding tables and chairs and other lifestyle products including basketball goals, playground equipment, outdoor sheds, and utility trailers. Lifetime's predecessor started making portable basketball goals in a garage in Riverdale, Utah, in 1973. Lifetime was formed in 1986 and has grown into a company with over 2,200 employees and 2.6 million square feet spread over 23 separate buildings and several lifestyle products.

2. Lifetime has applied innovation and cutting-edge technology in plastics and metals to create a family of affordable lifestyle products that feature superior strength and durability. Lifetime takes great pride in the innovation, quality, design and manufacture of its products. Lifetime protects its intellectual property through patents, trademarks and other means. In the United States, Lifetime's intellectual property portfolio includes literally hundreds of patents and more than fifty (50) trademark registrations. Lifetime diligently enforces its intellectual property rights and continually works to locate and prosecute those who infringe on these rights.

3. Lifetime owns several patents at issue in this case. The first group of patents pertain to personal tables and they bear U.S. Patent Nos. 6,912,961; 7,059,254; and 7,263,932 (collectively, "Personal Table Patents"). The second group of patents pertains to sports tables and they bear U.S. Patent Nos. 6,109,687 and 6,945,178 (collectively, "Sports Table Patents"). The third group of patents pertains to folding chairs and they bear U.S. Patent Nos. 6,542,842; 6,871,906; and 7,014,261 (collectively, "Folding Chair Patents"). The fourth group of patents pertains to tables that range in length from four (4) feet to eight (8) feet and bear U.S. Patent Nos. 7,069,865; 7,171,910; 7,114,453; 7,044,068; 6,895,872; 6,655,301; 6,550,404; and 6,848,370 (collectively, the "4' to 8' Table Patents").

4. The Lifetime products covered by the patents in suit have enjoyed continuous success since their introduction. They have generated substantial sales for Lifetime. In fact,

1  Lifetime has sold over 10,000,000 chairs that are covered by its patents.

2      5.    The Hardware Show was held at the Las Vegas Convention Center between May 5, 2009 and May 7, 2009. Lifetime exhibited its products at the Hardware Show in an area devoted to products relating to outdoor living. The Hardware Show drew tens of thousands of attendees, including buyers who may be interested in purchasing Lifetime's products as well as products from Lifetime's competitors.

    6.    The Defendants are and were exhibitors at the Hardware Show. Defendant Ningbo Wanxiang Plastic Products Co., Ltd. ("Ningbo") displayed and offered for sale products at the Hardware Show that infringe Lifetime's patents as further described below. Ningbo also handed out catalogs to attendees that feature the infringing products. Ningbo operated out of Booth No. 10275 in the North Hall of the Las Vegas Convention Center.

    7.    Lifetime had encountered Ningbo the week before the Hardware Show at the Canton Fair in China, at which Ningbo was selling products that infringe Lifetime's Chinese patents. Prior to filing a formal complaint with the China Intellectual Property Rights Office, Lifetime's representatives spoke with the people at Ningbo's booth and identified a product that Lifetime felt infringed its Chinese patent for a personal table. Ningbo voluntarily removed the item from its booth. Ningbo had been served with a cease and desist letter at the fair last year. The letter indicated that Lifetime had worldwide patents, including U.S. patents, and that Ningbo should carefully assess whether it's products infringed on any of Lifetime's patents and that Lifetime would vigorously pursue any potential infringement.

    8.    Defendants Hangzhou Dali Tools Packing Company, Limited, and Zhejiang Bestem Furniture, Company, Limited (collectively "The Hangzhou Defendants"), operated out of Booth No. 10101 in the North Hall of the Las Vegas Convention Center. The Hangzhou Defendants shared a booth with Defendants Ningbo Step-Forward Industry Corp. and Ningbo Step-Forward Import & Export Company, Limited (the "Step-Forward Defendants"). The names on the catalogs being distributed at the booth were Hangzhou Dali Tools Packing Co., Ltd. and Zhejiang Bestem Furniture, Co., Ltd. The Hangzhou Defendants were displaying and offering for sale products at the Hardware Show that infringe Lifetime's patents as further described

1  below. Lifetime had encountered The Hangzhou Defendants at the Canton Fair the week before
2  the Hardware Show as well. Lifetime filed a short formal complaint with the Chinese
3  Intellectual Property Rights Office, who determined that The Hangzhou Defendants' tables
4  infringed Lifetime's Chinese patents. After the fair, Chinese officials went to The Hangzhou
5  Defendants' booth and allowed Lifetime to remove The Hangzhou Defendants' infringing tables.

6        9. On May 5, 2009, the Court entered an order entitled Temporary Restraining &
7  Seizure Order. (*See* Docket No. 11.) The order enjoined the Defendants from infringing
8  Plaintiff's patents-in-suit and from "displaying, offering to sell, or selling, products that are
9  covered by Plaintiff's patents-in-suit." (*See id*. at 2, ll. 6-16.) The order also provided for the
10 seizure of certain infringing products from the Defendants' respective booths at the 2009
11 National Hardware Show. (*See id*. at 2:17-3:10.)

12       10. With respect to The Hangzhou Defendants, the order identified the following as
13 items that infringe Plaintiff's patents-in-suit: (1) 4-Foot Regular Folding Table, Model No.
14 ending in C124; (2) 4-Foot Fold-in-half Table, Model No. ending in Z122; (3) 5-Foot Regular
15 Folding Table, Model No. ending in C152; (4) 5-Foot Fold-in-half Table, Model No. ending in
16 Z152; (5) 6-Foot Regular Folding Table, Model No. ending in C184; (6) 6-Foot Fold-in-half
17 Table, Model No. ending in Z185; (7) 8-Foot Regular Folding Table, Model No. ending in C240;
18 (8) 8-Foot Fold-in-half Table, Model No. ending in Z240; (9) 72 Inch X 39 Inch rectangular
19 Table, Model No. ending in XC183-100; (10) 6-Foot Rectangular Table, Model No. ending in
20 XC183; (11) 79 Inch X 36 Inch Rectangular Table, Model No. ending in C200; (12) 6-Foot Bar
21 Folding Table, Model No. ending in HY183; (13) 3 Piece Picnic Set, Model No. ending in B113;
22 (14) 30-Inch Personal Table, Model No. ending in SJ32; (15) Contoured Folding Chair, Model
23 No. ending in L53; (16) Lightweight Folding Chair, Model No. ending in D53; (17) Comfort
24 Style Folding Chair, Model No. ending in Y53; and (18) Folding Chair, Model No. ending in
25 X53 (collectively "Hangzhou's Infringing Products"). (*See id*. at 2:24-3:10.)

26       11. With respect to Ningbo, the order identified the following as items that infringe
27 Plaintiff's patents-in-suit: (1) 2.5 foot personal folding table model number WX-S76; (2) sports
28 table and bench sets (which Ningbo refers to as its "3 piece kit beer table" and which bear model

numbers WX-B113 and WX-B183); (3) two folding chairs (model numbers WX-C053 and WX-C53A); and (4) tables (folding and nonfolding) in lengths ranging from 4' to 8' bearing model numbers WX-F122, WX-F150, WXF183, WX-F210, WX-L122, WX-L150, WX-L183, and WX-L210 (collectively "Ningbo's Infringing Products"). (*See id*. at 2, ll. 17-23.) The order provided for the seizure of "records of Defendants' sales and offers to sell infringing products (including all computer records and other electronic records), and Defendants' promotional display(s), sales equipment, and materials used to facilitate Defendants' infringements." (*See id*. at 3, ll. 11-18.) It also required the Defendants to "file and serve any opposition to Plaintiff's motion for a preliminary injunction on or before May 12, 2009." (*See id*. at 4, ll. 7-8.)

12. On May 6, 2009, Plaintiff's counsel, accompanied by Deputy United States Marshals, went to the 2009 National Hardware Show to serve the Defendants with copies of the Summons, Complaint, Plaintiff's Motion, the Declaration of Brent Allen in Support of Plaintiff's Motion, the exhibits attached thereto, and a copy of the Court's Temporary Restraining & Seizure Order, (collectively the "Motion Papers"), and to seize any infringing items that the Defendants were displaying, offering to sell, or selling. Plaintiff's Vice President of Operations, Brent Allen, directed Plaintiff's counsel and the Deputy United States Marshals to Booth No. 10101 in the North Hall of the Las Vegas Convention Center. The booth was shared by The Hangzhou Defendants, on the one hand, and the Step-Forward Defendants, on the other hand.

13. The Step-Forward Defendants did not appear to be displaying, offering to sell, or selling products covered by Plaintiff's patents-in-suit. Thus, the Motion Papers were not served on the Step-Forward Defendants and no items were seized from them. Plaintiff's counsel subsequently dismissed the Step-Forward Defendants from this action on May 12, 2009. (*See id*. & Docket No. 13.)

14. The Hangzhou Defendants, however, were displaying, offering to sell, and/or selling, no less than eleven items covered by Plaintiff's patents-in-suit and identified in the Court's Temporary Restraining & Seizure Order. Those items were:

- Three plastic folding chairs, Model Nos. ending in L53, D53, or X53;
- One 30-Inch Personal Table, Model No. ending in SJ32;

- One 6-Foot Fold-in-half Table, Model No. ending in Z185;
- Two 6-Foot Regular Folding Table, Model No. ending in C184;
- One 3 Piece Picnic Set, Model No. ending in B113 (*i.e.*, "Sports Table");
- One 4-Foot Regular Folding Table, Model No. ending in C124;
- One 4-Foot Fold-in-half Table, Model No. ending in Z122; and,
- One 6-foot table.

The Motion Papers were served on the Hangzhou Defendants and Plaintiff's counsel seized the infringing items.

14. Mr. Allen directed Plaintiff's counsel and the Deputy U.S. Marshals to Booth No. 10275 in the North Hall of the Las Vegas Convention Center. The booth was occupied by Ningbo. Ningbo was also displaying, offering to sell, and/or selling, no less than eleven items covered by Plaintiff's patents-in-suit and identified in the Court's Temporary Restraining & Seizure Order. Those items were:

- One 2.5 foot personal folding table model number WX-S76;
- One sports table and bench set (which Ningbo refers to as its "3 piece kit beer table," Model Nos. WX-B113 and/or WX-B183);
- Four plastic folding chairs, Model Nos. WX-C053 and/or WX-C53A;
- One 4-Foot fold-in-half table, Model No. WX-F122;
- One 5-Foot fold-in-half table, Model No. WX-F150;
- One 6-Foot fold-in-half table, Model No. WX-F183;
- One 7-Foot fold-in-half table, Model No. WX-F210; and,
- One 6-Foot Straight Table, Model No. WX-L183.

The Motion Papers were served upon Ningbo and Plaintiff's counsel seized the infringing items.

## Conclusions of Law

1. A patent grants its owner "the right to exclude others from making, using, offering for sale, or selling" the patented invention in the United States. 35 U.S.C § 154(a)(l). Anyone who makes, uses, or sells a patented invention without the patent owner's consent is an infringer. 35 U.S.C. § 271(a).

2. A patent includes several parts: the written description, the drawings, and the claims. 35 U.S.C. §§ 111-113. The written description and drawings describe the invention in sufficient detail to enable others to create the invention. 35 U.S.C. § 112. The claims are a series of numbered paragraphs which appear at the end of the written description. See 35 U.S.C. § 112.

3. Each claim is a list of elements that define the legal scope of a patent owner's invention. Markman v. Westview Instruments, 517 U.S. 370, 373 (1996); Phillips v. AWH Corp., 415 F.3d 1303, 1308 (Fed. Cir. 2005). The claims set the boundaries of the property right granted by a patent, fixing the line between the inventor's property and the public domain. Markman, 517 U.S. at 373; Phillips, 415 F.3d at 1308 ("It is a bedrock principle of patent law that the claims of a patent define the invention to which the patentee is entitled the right to exclude")(internal citations omitted).

4. The scope and meaning of the claims is determined by the court as a matter of law. See Cybor Corp. v. FAS Techs., Inc., 138 F.3d 1448, 1454 (Fed. Cir. 1998) (en banc); Markman v. Westview Instruments, Inc., 52 F.3d 967, 979 (Fed. Cir. 1995) (en banc), aff'd, 517 U.S. 370 (1996). Words in a patent claim are given their ordinary and customary meaning, unless the patent owner clearly defined these words differently in the specification or in statements made to the United States Patent and Trademark Office ("PTO") to obtain allowance of its patent. Johnson Worldwide Associates v. Zebco Corp. 175 F.3d 985, 989-90 (Fed. Cir. 1999); Interactive Gift Express v. Compuserve, 256 F.3d 1323, 1331 (Fed. Cir. 2001).

5. Infringement of a patent occurs when "every limitation set forth in a claim [is] found in an accused product or process exactly or by a substantial equivalent." Jurgens v. McKasy, 927 F.2d 1552, 1560 (Fed. Cir. 1991); see also Mannesmann Demag Corp. v. Engineered Metal Prods. Co., 793 F.2d 1279, 1282 (Fed. Cir. 1986).

6. The law governing patent infringement cases differs from the law governing most other matters in the federal district courts. The United States Court of Appeals for the Federal Circuit has exclusive appellate jurisdiction of cases arising under the patent laws. See 28 U.S.C. § 1295(a)(l). For this reason, the federal district courts must follow the precedents of the Federal Circuit, not the Ninth Circuit, in interpreting the patent laws. Foster v. Hallco Mfg. Co., 947 F.2d

469, 475 (Fed. Cir. 1991).

7. In particular, the standard for granting a preliminary injunction is governed by the law of the Federal Circuit. <u>Hybritech, Inc. v. Abbott Labs</u>, 849 F.2d 1446, 1451 n.l2 (Fed. Cir. 1988). However, "the standards applied to the grant of a preliminary injunction are no more nor less stringent in patent cases than in other areas of the law." <u>Abbott Labs v. Sandoz, Inc.</u>, 544 F.3d 1341, 1368 (Fed. Cir. 2008) (<u>quoting</u> <u>H.H. Robertson Co. v. United Steel Deck</u>, 820 F.2d 384, 387 (Fed. Cir. 1987). The Court must consider and balance four factors: (1) whether the patentee is reasonably likely to succeed on the merits at trial; (2) whether the patentee would suffer irreparable harm should the injunction not be granted; (3) whether the balance of the hardships tips in favor of the patentee; and (4) the impact of a preliminary injunction on the public interest. <u>Id.</u> at 1344.

8. Lifetime's patents are presumed valid by statute. <u>See</u> 35 U.S.C. § 282. "This statutory presumption derives in part from recognition of the technological expertise of the patent examiners." <u>Interconnect Planning Corp. v. Feil</u>, 774 F.2d 1132, 1139 (Fed. Cir. 1985). Moreover, the presumption of validity carries with it "a presumption that the [Patent] Examiner did his duty and knew what claims he was allowing." <u>Al-Site Corp. v. VSI Int'l, Inc.</u>, 174 F.3d 1308, 1323 (Fed. Cir. 1999). The statutory presumption can be overcome only by clear and convincing evidence of invalidity. <u>Uniroyal, Inc. v. Rudkin-Wiley Corp.</u>, 837 F.2d 1044, 1050 (Fed. Cir. 1988).

9. This strong presumption of validity, without more, is sufficient to show a likelihood of success on the validity issue. <u>See</u> <u>New England Braiding Co. v. A.W. Chesterton Co.</u>, 970 F.2d 878, 882 (Fed. Cir. 1992); <u>Power Controls Corp. v. Hybrinetics, Inc.</u>, 806 F.2d 234, 240 (Fed. Cir. 1986); <u>Roper Corp. v. Litton Systems, Inc.</u>, 757 F.2d 1266, 1270 (Fed. Cir. 1985). Thus, unless the Defendants come forward with some substantial evidence of invalidity, this Court should conclude that Lifetime will prevail on the issue of patent validity at trial. <u>See</u> <u>Canon Computer Sys. v. Nu-Kote Int'l</u>, 114 F.3d 1085, 1088 (Fed. Cir. 1998); <u>Roper</u>, 757 F.2d at 1270.

10. The validity of Lifetime's patents is also confirmed by objective evidence from

the marketplace. The commercial success of an invention is a strong indication that the invention is not merely an obvious variation of earlier work. <u>Graham v. John Deere Co. of Kansas City</u>, 383 U.S. 1, 17 (1966); <u>Ecolochem, Inc. v. Southern Cal. Edison Co.,</u> 227 F.3d 1361, 1378 (Fed. Cir. 2000). If a commercially successful invention were obvious, then others would have thought of it first and reaped the financial reward. See <u>Panduit Corp. v. Dennison Mfg.</u>, 774 F.2d 1082, 1099 (Fed. Cir. 1985). Commercial success is often "the most probative and cogent evidence" relating to patent validity. <u>Stratoflex, Inc. v. Aeroquip Corp.</u>, 713 F.2d 1530, 1538 (Fed. Cir. 1983).

11. Lifetime's patents are presumptively valid.

12. Defendant Ningbo and The Hangzhou Defendants have infringed claims of the Lifetime patents through, among other activities, importing, using, selling and/or offering for sale products that are covered by one or more of the claims of Lifetime's patents.

13. Defendant Ningbo's Personal Table infringes Lifetime's patents. Ningbo's 2.5 foot personal folding table (model WX-S76) was on display and offered for sale at the Hardware Show and was included in Ningbo's catalog that it distributed at the Hardware Show. The Ningbo personal folding table infringes at least one claim in each of the Personal Table Patents bearing U.S. Patent Nos. 6,912,961 and 7,263,932.

14. The Ningbo Personal Table appears to have all of the elements of Claim 1 of the '961 patent, including a table top constructed from blow-molded plastic; a hollow interior portion formed during the blow-molding process; a generally downwardly extending lip that is integrally formed in the table top as part of a unitary, one-piece structure; at least two leg receiving recesses integrally formed in the table top as part of the unitary one-piece construction; a first leg, the upper part of which is sized and configured to be selectively received and retained within one of the leg receiving recesses disposed towards the first side of the table top; and a second leg the upper part of which is sized and configured to be selectively received and retained within one of the leg receiving recesses disposed towards the first side of the table top, the first and second leg being pivotally interconnected and having a generally X-shaped configuration when the first leg and second leg are received and retained within the leg receiving recesses.

15. The Ningbo Personal Table appears to have all of the elements of Claim 1 of the '932 patent. The claim is similar to Claim 1 in the '932 patent except, most importantly, a length of the upper portion of the first leg is adjustable between a first position in which the first leg can be inserted into a desired pair of leg receiving recesses and a second position in which the first leg can be secured within a desired pair of leg receiving recesses. This essentially enables the height of the table to be adjusted.

16. The Hangzhou Defendants' Personal Table infringes Lifetime's patents. The Hangzhou Defendants' personal folding table (model ending in SJ32) was on display and offered for sale at the Hardware Show and was included in the Hangzhou Defendant's catalog that was distributed at the Hardware Show. This personal folding table infringes at least one claim in U.S. Patent No. 7,059,254 and appears to have all of the elements of Claim 1 of the patent.

17. Ningbo and The Hangzhou Defendants have infringed Lifetime's Sports Table Patents. Their sports table and bench sets were on display and offered for sale at the Hardware Show and in the Defendants' respective catalog distributed at the show. Ningbo refers to this product as its "3 piece kit beer table" and it bears model nos. WX-B113 and WX-B183. The Hangzhou Defendants refer to this product as a 3 piece picnic set. They use the model number B113 for this product. Ningbo's and The Hangzhou Defendants' sports table and bench products infringe at least one claim in each of the Sports Table Patents bearing U.S. Patent Nos. 6,109,687 and 6,945,178 (collectively, "Sports Table Patents").

18. Ningbo's and The Hangzhou Defendants' sports tables appear to have all of the elements of Claim 1 of the '687 patent, including, without limitation: (a) a table top and legs supporting the table top; (b) a cavity underneath the table top; (c) a bench with legs supporting the bench; (d) the ability to store the bench in the cavity created by the table top; and (e) a retainer for securing the table legs and for securing the bench underneath the table top.

19. Ningbo's and The Hangzhou Defendants' sports tables also appear to have all of the elements of Claim 1 of the '178 patent, including, without limitation: (a) a table top including an upper surface that is spaced apart from a lower surface sufficient to create a hollow interior portion formed during the manufacturing process; (b) two support legs that extend from a

1  collapsed position underneath and parallel to the table top to an extended position perpendicular to the table top; (c) an elongated support member that is at least half the length of the table top; and (d) two support braces connected to each of the two supporting legs.

20. Ningbo and The Hangzhou Defendants have infringed Lifetime's folding chair patents. Ningbo's and The Hangzhou Defendants' folding chairs were on display and are offered for sale at the Hardware Show and in Ningbo's and The Hangzhou Defendants' respective catalogs. The Hangzhou Defendants' chairs bear model numbers D53, L523, X53, and Y53. Ningbo's and The Hangzhou Defendants' folding chairs infringe at least one claim in each of Lifetime's Folding Chair Patents bearing U.S. Patent Nos. 6,542,842; 6,871,906; and 7,014,261.

21. Ningbo's and The Hangzhou Defendants' folding chairs appear to have all of the elements of Claim 1 of the '842 Patent, including, without limitation: (a) two leg assemblies extending generally upward; (b) two support brackets having a generally L-shaped configuration and being connected to each of the leg assemblies; and (c) a lightweight seat constructed from blow-molded plastic that connects to the two support brackets in such a way that no metal supports extending laterally across the seat are required.

22. Ningbo's and The Hangzhou Defendants' folding chairs also appear to have all of the elements of Claim 1 of the '906 Patent, including, without limitation, a folding chair that is capable of being moved between a first position for supporting a person and a second position for storage, including two legs, a seat constructed from blow molded plastic, and two supporting brackets that are inserted into grooves in the chair seat.

23. Ningbo's and The Hangzhou Defendants' folding chairs also appear to have all of the elements of Claim 1 of the '261 Patent, including, without limitation: (a) a folding chair that is capable of being moved between a first position for supporting a person and a second position for storage; (b) two leg assemblies, each containing a first leg and a second leg; (c) links partially connecting the first legs to the second legs; (d) a plastic seat; (e) two supporting brackets; and (f) two four-pivot linkages that permit the chair to be moved between the first position and the second position.

24. Ningbo and The Hangzhou Defendants have infringed Lifetime's 4' to 8' Table

Patents. Ningbo's and The Hangzhou Defendants' nfringing tables were on display and offered for sale at the Hardware Show and in Ningbo's and The Hangzhou Defendants' respective catalogs. Ningbo and The Hangzhou Defendants offer several models of infringing tables in two styles (folding and non-folding) and in lengths ranging from 4' to 8'. Ningbo's infringing tables bear model numbers WX-F122, WX-F150, WX-F183, WX-F210, WX-L122, WX-L150, WX-L183, and WX-L210. The Hangzhou Defendants' infringing tables bear model numbers ending in C124, Z122, C184, Z185, C152, Z152, C240, Z240, XC183, XC183-100, C200, and HY183. Ningbo's and The Hangzhou Defendants' tables infringe at least one claim in each of Lifetime's 4' to 8' Table Patents, U.S. Patent Nos. 7,069,865; 7,171,910; 7,114,453; 7,044,068; 6,895,872; 6,655,301; 6,550,404; and 6,848,370.

25. Ningbo's and The Hangzhou Defendants' tables appear to have all the elements of Claim 1 of the '865 Patent, Claim 1 of the '910 Patent, and Claim 1 of the '453 Patent, including, without limitation: (a) a table top constructed of blow molded plastic including a hollow interior portion forced during the blow molding process; (b) a first surface; (c) a second surface parallel to the first surface but separated from the first surface by a distance, enclosing at least a portion of the generally hollow blow molded structure; and (d) *a generally uniform pattern of depressions formed in the second surface covering a substantial portion of that surface*.

26. Ningbo's and The Hangzhou Defendants' tables appear to have all the elements of Claim 1 of the '068 Patent, and Claim 1 of the '872 Patent, including, without limitation: (a) a table top constructed of blow molded plastic including a hollow interior portion forced during the blow molding process; (b) a lip integrally formed as part of the table top; (c) a frame connected to the lip; (d) two leg assemblies connected to the lip that are each selectively moveable between an extended position and a collapsed position; and (e) such that each leg may be folded underneath the table without extending beneath the lowest part of the lip.

27. Ningbo's and The Hangzhou Defendants' tables appear to have all the elements of Claim 1 of the '301 Patent including, without limitation: (a) a table top constructed of blow molded plastic including a hollow interior portion formed during the blow molding process; (b) a lip integrally formed as part of the table top; (c) a frame connected to the lip; (d) two leg

assemblies connected to the lip that are each selectively moveable between an extended position and a collapsed position; and (e) such that each leg may be folded underneath the table without extending beneath the lowest part of the lip.

28. Ningbo's and The Hangzhou Defendants' tables appear to have all the elements of Claim 1 of the '404 Patent including, without limitation: (a) a table top constructed of blow molded plastic including a hollow interior portion forced during the blow molding process; (b) a plurality of depressions integrally formed as a unitary portion of the table top; (c) a lip integrally formed as part of the table top; (d) two support assemblies (*i.e.*, legs) that are each selectively moveable between an extended position and a collapsed position; and (e) two support braces.

29. Ningbo's and The Hangzhou Defendants' tables appear to have all the elements of Claim 1 of the '370 Patent including, without limitation: (a) a table top constructed of blow molded plastic including a working surface, a mounting surface, and a hollow interior portion that is formed during the blow molding process; (b) a plurality of depressions integrally formed as a unitary portion of the table top; (c) a lip generally extending down from the table top including a hollow interior portion formed during the blow molding process; (d) two support assemblies (*i.e.*, legs) that are each selectively moveable between an extended position and a collapsed position; (e) such that each leg may be folded underneath the table in the collapsed position to facilitate stacking; and (f) two support braces.

30. Lifetime has established a likelihood of success on its patent infringement claim and, therefore, irreparable injury is presumed.

31. When a patent owner makes a strong showing that its patent is valid and infringed, irreparable harm is presumed. Bell & Howell Document Management Prods. v. Altek Systems, 132 F.3d 701, 708 (Fed. Cir. 1997); Bio-Technology Gen. Corp. v. Genentech, Inc., 80 F.3d 1553, 1565 (Fed. Cir. 1996). As the Federal Circuit has explained in its seminal decision on preliminary injunctions and irreparable harm:

///

///

///

> The very nature of the patent right is the right to exclude others. Once the patentee's patents have been held to be valid and infringed, he should be entitled to the full enjoyment and protection of his patent rights. The infringer should not be allowed to continue his infringement in the face of such a holding. A court should not be reluctant to use its equity powers once a party has so clearly established his patent rights. We hold that where validity and continuing infringement have been clearly established, as in this case, immediate irreparable harm is presumed. To hold otherwise would be contrary to the public policy underlying the patent laws.

Smith Int'l Inc. v. Hughes Tool Co., 718 F.2d 1573, 1581 (Fed. Cir. 1983); see also Abbott Labs, 544 F.3d at 1361-62 (the mere *likelihood* of price erosion, loss of market position, revenue, market opportunities or goodwill is sufficient to show irreparable injury).

32. Lifetime will suffer irreparable harm if a preliminary injunction is not granted.

33. The Defendants' sole hardship should a preliminary injunction issue is that they will be enjoined from engaging in illegal conduct. Defendants also would not be harmed by maintaining the accused infringing product in Las Vegas pending a resolution of the injunction and infringement issues. Conversely, Lifetime will be greatly harmed if Defendants continue to show and sell their infringing products and then remove these products from the United States in order to infringe Lifetime's patents in the future. Accordingly, the balance of hardships favors Lifetime.

34. The enforcement of valid patents serves the public interest. Hybritech, Inc. v. Abbott Labs, 849 F.2d 1446, 1458 (Fed. Cir. 1988). The public interest factor favors granting a preliminary injunction unless "there exists some critical public interest that would be injured by the grant of preliminary relief." Id. For example, in rare instances, courts may decline injunctive relief where an injunction would harm the public health. Rite-Hite Corp. v. Kelley Co., 56 F.3d 1538, 1547-48 (Fed. Cir. 1995) (en banc). Because this case involves patents for lifestyle products, no issue of critical public interest would be implicated by the issuance of a preliminary injunction in this case. Accordingly, the public interest favors granting a preliminary injunction against Ningbo and The Hangzhou Defendants.

///

///

///

**NOW THEREFORE, IT IS HEREBY ORDERED THAT** Ningbo and The Hangzhou Defendants and their respective officers, directors, employees, agents, and attorneys are hereby preliminarily enjoined and restrained from making, using, offering to sell, selling, or importing into the United States, products that are covered by Plaintiff's patents-in-suit, including U.S. Patent Nos. 6,912,961; 7,059,254; and 7,263,932 (collectively, the "Personal Table Patents"); U.S. Patent Nos. 6,109,687 and 6,945,178 (collectively, the "Sports Table Patents"); U.S. Patent Nos. 6,542,842; 6,871,906; and 7,014,261 (collectively, the "Folding Chair Patents"); and U.S. Patent Nos. 7,069,865; 7,171,910; 7,114,453; 7,044,068; 6,895,872; 6,655,301; 6,550,404; 7,128,002; 6,931,999; and 6,848,370 (collectively, the "4' to 8' Table Patents").

Such products include, but are not limited to Ningbo's: (1) 2.5 foot personal folding table model number WX-S76; (2) sports table and bench sets (which Ningbo refers to as its "3 piece kit beer table" and which bear model numbers WX-B113 and WX-B183); (3) two folding chairs (model numbers WX-C053 and WX-C53A); and (4) tables (folding and non-folding) in lengths ranging from 4' to 8' bearing model numbers WX-F122, WX-F150, WX-F183, WX-F210, WX-L122, WX-L150, WX-L183, and WX-L210 (collectively "Ningbo's Infringing Products").

Such products also include, but are not limited to The Hangzhou Defendants': (1) 4-Foot Regular Folding Table, Model No. ending in C124; (2) 4-Foot Fold-in-half Table, Model No. ending in Z122; (3) 5-Foot Regular Folding Table, Model No. ending in C152; (4) 5-Foot Fold-in-half Table, Model No. ending in Z152; (5) 6-Foot Regular Folding Table, Model No. ending in C184; (6) 6-Foot Fold-in-half Table, Model No. ending in Z185; (7) 8-Foot Regular Folding Table, Model No. ending in C240; (8) 8-Foot Fold-in-half Table, Model No. ending in Z240; (9) 72 Inch X 39 Inch rectangular Table, Model No. ending in XC183-100; (10) 6-Foot Rectangular Table, Model No. ending in XC183; (11) 79 Inch X 36 Inch Rectangular Table, Model No. ending in C200; (12) 6-Foot Bar Folding Table, Model No. ending in HY183; (13) 3 Piece Picnic Set, Model No. ending in B113; (14) 30-Inch Personal Table, Model No. ending in SJ32; (15) Contoured Folding Chair, Model No. ending in L53; (16) Lightweight Folding Chair, Model No. ending in D53; (17) Comfort Style Folding Chair, Model No. ending in Y53; and (18) Folding Chair, Model No. ending in X53 (collectively "Hangzhou's Infringing Products").

**IT IS HEREBY FURTHER ORDERED THAT** the cash deposit of $2,000 previously deposited by plaintiff with the clerk of the court shall remain on deposit as the bond in this matter, pending further order of the court.

**IT IS SO ORDERED.**

_____
**UNITED STATES DISTRICT JUDGE**

Dated: May 20, 2009